```
           IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF TEXAS
                      HOUSTON DIVISION
```

| | | |
|---|---|---|
| MAMUKA KAKABADZE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-3701 |
| | § | |
| M5 INTERNATIONAL COMPANY, | § | |
| INC. and ZLATAN STOYANOV, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mamuka Kakabadze brought this action against defendants M5 International Company ("M5") and Zlatan Stoyanov[1] (collectively "Defendants") alleging six causes of action related to the purchase of armaments and munitions for the Ministry of Internal Affairs of Georgia. Pending before the court are Plaintiff, Mamuka Kakabadze's Motion for Summary Judgment Against Defendants M5 International Company, Inc. and Zlatan Stoyanov ("Kakabadze's Motion for Summary Judgment") (Docket Entry No. 29) and Defendants M5 International Company, Inc. and Zlatan Stoyanov's Motion for Summary Judgment and/or Motion to Dismiss ("Defendants' Motion for Summary Judgment") (Docket Entry No. 30). For the reasons explained below, both motions will be denied.

---

[1]Stoyanov is also known as Zlatan Stoyanov Kharalampiev.

## I. Background

### A. Undisputed Facts

Kakabadze is "an authorized buyer of certain arms, munitions, and equipment for the Ministry of Internal Affairs of the Republic of Georgia" ("the Ministry").[2] The Ministry "is the law enforcement agency in the Republic of Georgia and is responsible for police and related matters."[3] In 2008 Kakabadze and M5 executed a contract for the purchase and delivery of certain rifles, ammunition, and equipment.[4] Kakabadze was identified as the "BUYER" and M5 was designated the "Purchase Manager."[5] Stoyanov is M5's president.[6] The contract obligated M5 to obtain the designated goods on behalf of Kakabadze, obtain the necessary export licenses and other authorizations, and ship the goods to the Ministry in return for a 10% commission on the purchase price of

---

[2] Kakabadze's Motion for Summary Judgment, Docket Entry No. 29, p. 9; see also Defendants' Motion for Summary Judgment, Docket Entry No. 30, p. 10. (Page citations are to the pagination imprinted at the top of the page by the federal court's electronic filing system.)

[3] Plaintiff's Original Complaint ("Original Complaint"), Docket Entry No. 1, p. 2 ¶ 7; Defendants M5 International Company, Inc. and Zlatan Stoyanov's First Amended Answer, Affirmative Defenses, and First Amended Counterclaims ("First Amended Answer"), Docket Entry No. 19, p. 2 ¶ 7.

[4] Contract, Docket Entry No. 35.

[5] Id. at 1; see also id. at 6.

[6] Kakabadze's Motion for Summary Judgment, Docket Entry No. 29, p. 9; Defendants' Motion for Summary Judgment, Docket Entry No. 30, p. 1.

the goods before shipment.[7] The Ministry is identified in the contract as "Consignee."[8] Kakabadze paid the purchase price of the goods, all freight, shipping, and export fees, and M5's commission using his personal funds.[9] He was later reimbursed by the Ministry.[10]

M5 continued to purchase and ship to the Ministry certain armaments, munitions, and other equipment on behalf of Kakabadze through early 2012.[11] Sometimes these transactions were facilitated by the assistance of Ievgen Pugach.[12] M5 billed Kakabadze for at

---

[7]Contract, Docket Entry No. 35, pp. 1-3.

[8]Id. at 2.

[9]Kakabadze's Motion for Summary Judgment, Docket Entry No. 29, p. 1; Defendants' Motion for Summary Judgment, Docket Entry No. 30, p. 2; Kakabadze Deposition Transcript, Exhibit 1 to Defendants' Motion for Summary Judgment, Docket Entry No. 30-1, p. 2; Plaintiff, Mamuka Kakabadze's Memorandum of Law in Opposition to Defendants M5 International Company, Inc. and Zlatan Stoyanov's Motion for Summary Judgment and/or Motion to Dismiss ("Kakabadze's Response"), Docket Entry No. 31-1, p. 6.

[10]Kakabadze Deposition Transcript, Exhibit 2 to Defendants M5 International Company, Inc. and Zlatan Stoyanov's Response to Plaintiff Mamuka Kakabadze's Motion for Summary Judgment on Liability ("Defendants' Response"), Docket Entry No. 32-2, pp. 5-8, 24-25; Defendants' Motion for Summary Judgment, Docket Entry No. 30, p. 2.

[11]Original Complaint, Docket Entry No. 1, p. 5 ¶ 35; Kakabadze's Motion for Summary Judgment, Docket Entry No. 29, pp. 9-10; Defendants' Motion for Summary Judgment, Docket Entry No. 30, p. 6.

[12]See Defendants' Motion for Summary Judgment, Docket Entry No. 30, pp. 1-2; Kakabadze Deposition Transcript, Exhibit 2 to Defendants' Response, Docket Entry No. 32-2, pp. 8-9, 22-23; Pugach Deposition Transcript, Exhibit 4 to Defendants' Response, Docket Entry No. 32-4, pp. 10-20. Pugach is also known as Evgenii. (continued...)

least some of these transactions at prices higher than it paid to the original suppliers,[13] and sometimes altered original suppliers' invoices to indicate that it paid more for the goods than it actually did.[14]

B.  **Procedural History**

Kakabadze brought this action on December 21, 2012.[15] On February 13, 2013, Defendants filed a motion to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1).[16] Defendants' motion was denied on March 18, 2013.[17]

On April 1, 2013, Defendants filed an answer to Kakabadze's Original Complaint in which they alleged a counterclaim for fraud against Kakabadze.[18] On April 23, 2013, Defendants filed an amended

---

[12](...continued)
Kakabadze's Motion for Summary Judgment, Docket Entry No. 29, p. 12. The exact role of Pugach is disputed by the parties.

[13]See Kakabadze's Motion for Summary Judgment, Docket Entry No. 29, pp. 16-18; Defendants' Response, Docket Entry No. 32, pp. 7-8.

[14]Original Complaint, Docket Entry No. 1, p. 4 ¶¶ 26-28, pp. 7-8 ¶¶ 51-52, p. 11 ¶¶ 71-72, p. 20 ¶¶ 129-30, pp. 23-24 ¶¶ 151-52; First Amended Answer, Docket Entry No. 19, pp. 3-4 ¶¶ 26-28, p. 5 ¶¶ 51-52, p. 6 ¶¶ 71-72, p. 9 ¶¶ 129-30, p. 10 ¶¶ 151-52.

[15]Original Complaint, Docket Entry No. 1.

[16]Defendants M5 International Company, Inc. and Zlatan Stoyanov's Motion to Dismiss for Lack of Standing, Docket Entry No. 6.

[17]Order, Docket Entry No. 12.

[18]Defendants M5 International Company, Inc. and Zlatan Stoyanov's Original Answer, Affirmative Defenses, and Counterclaims, Docket Entry No. 14.

answer[19] in order to plead their fraud allegations with the specificity required under Federal Rule of Civil Procedure 9(b).[20] Kakabadze filed an answer to Defendants' counterclaim on May 14, 2013.[21]

On September 27, 2013, Kakabadze filed a motion for summary judgment.[22] On October 17, 2013, Defendants filed a motion for continuance to respond to Kakabadze's motion.[23] After a hearing, the court granted Defendants' Motion for Continuance and denied Kakabadze's motion for summary judgment without prejudice.[24]

On February 21, 2014, Kakabadze filed his pending motion for summary judgment.[25] Defendants filed their pending motion for summary judgment the same day.[26] On March 14, 2014, each party

---

[19]First Amended Answer, Docket Entry No. 19.

[20]See Stipulation to Extend Time for Defendants, M5 International Company, Inc. and Zlatan Stoyanov, to File an Amended Counterclaim, Docket Entry No. 17.

[21]Response of Plaintiff Mamuke Kakabadze to First Amended Counterclaims and Alleged Facts Relevant Thereto of Defendants, Docket Entry No. 20.

[22]Plaintiff, Mamuka Kakabadze's Motion for Summary Judgment Against Defendants M5 International Company, Inc. and Zlatan Stoyanov, Docket Entry No. 22.

[23]Defendants M5 International Company, Inc. and Zlatan Stoyanov's Motion for Continuance ("Motion for Continuance"), Docket Entry No. 24.

[24]Hearing Minutes and Order, Docket Entry No. 28.

[25]Kakabadze's Motion for Summary Judgment, Docket Entry No. 29.

[26]Defendants' Motion for Summary Judgment, Docket Entry No. 30.

filed a response to the other's motion.[27] Kakabadze filed his reply on March 26, 2014,[28] and Defendants filed their reply on March 28, 2014.[29]

## II. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure mandates summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." Lincoln Gen. Ins. Co. v. Reyna, 401 F.3d 347, 349 (5th Cir. 2005). When the nonmoving party would bear the ultimate burden of proof at trial, the moving party may satisfy its summary judgment burden by "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v.

---

[27]Plaintiff, Mamuka Kakabadze's Response in Opposition to Defendants M5 International Company, Inc. and Zlatan Stoyanov's Motion for Summary Judgment and/or Motion to Dismiss, Docket Entry No. 31; Kakabadze's Response, Docket Entry No. 31-1; Defendants' Response, Docket Entry No. 32.

[28]Plaintiff, Mamuka Kakabadze's Reply Brief in Support of His Motion for Summary Judgment Against Defendants M5 International Company, Inc. and Zlatan Stoyanov, Docket Entry No. 33.

[29]Defendants M5 International Company, Inc. and Zlatan Stoyanov's Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 34.

Catrett, 106 S. Ct. 2548, 2554 (1986). Rule 56 does not require such a movant to negate the elements of the nonmovant's case. Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). Where the moving party would bear the burden of proof at trial, it must present evidence that would require "a directed verdict if the evidence went uncontroverted at trial." Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991). A defendant moving for summary judgment based on an affirmative defense "'must establish each element of that defense as a matter of law.'" Shanks v. AlliedSignal, Inc., 169 F.3d 988, 992 (5th Cir. 1999) (quoting Crescent Towing & Salvage Co., Inc. v. M/V Anax, 40 F.3d 741, 744 (5th Cir. 1994)).

Once the movant has carried this burden the nonmovant must show that material facts exist over which there is a genuine issue for trial. Reyna, 401 F.3d at 349 (citing Celotex, 106 S. Ct. at 2553-54). The parties may support the existence or nonexistence of a genuine fact issue by either (1) citing to particular parts of the record, including depositions, documents, electronically stored information, affidavits or declarations, admissions, and interrogatory answers, or (2) showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)-(B). In reviewing this evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or

weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2110 (2000).

### III. Defendants' Motion for Summary Judgment

Kakabadze alleges six causes of action against Defendants in his Original Complaint: (1) breach of fiduciary duty,[30] (2) fraud,[31] (3) fraudulent inducement,[32] (4) breach of contract,[33] (5) conversion,[34] and (6) violation of the Texas Theft Liability Act.[35] Defendants have moved for summary judgment on all of Kakabadze's claims.

Defendants argue that Kakabadze does not have standing to bring his claims because he was acting as an agent for the Ministry.[36] Under Texas law "[t]he general rule is that one who contracts as agent cannot maintain an action, in his own name and right, upon the contract." Tinsley v. Dowell, 26 S.W. 946, 948 (Tex. 1894). However, the Texas Supreme Court has recognized four exceptions to the general rule:

---

[30]Original Complaint, Docket Entry No. 1, pp. 6-10 ¶¶ 43-66.

[31]Id. at 10-13 ¶¶ 67-86.

[32]Id. at 13-17 ¶¶ 87-109.

[33]Id. at 17-19 ¶¶ 110-120.

[34]Id. at 19-23 ¶¶ 121-144.

[35]Id. at 23-26 ¶¶ 145-164.

[36]Defendants' Motion for Summary Judgment, Docket Entry No. 30, pp. 10-12.

> First, where the agent contracts in his own name; second, where the agent does not disclose his principal, who is unknown; third, where, by the usages of trade, the agent is authorized to act as owner of the property; fourth, where the agent has an interest in the subject-matter of the contract.

Id. Kakabadze has produced a contract between himself and M5 wherein he is identified as the "BUYER" and M5 is identified as his "Purchase Manager."[37] Thus, in at least one transaction between the parties Kakabadze contracted in his own name. Cf. Carter v. Dripping Springs Water Supply Corp., No. 03-03-00753-CV, 2005 WL 121867, at *6 (Tex. App.—Austin Jan. 21, 2005, no pet.) ("Even assuming [Plaintiff] acted as an agent, an agent may sue in his own name when the agent contracts in his own name. [Plaintiff] contracted in his own name as evidenced by the contract at issue in this case, which defines [Plaintiff] as the seller." (citations omitted) (citing Perry v. Breland, 16 S.W.3d 182, 187 (Tex. App.—Eastland 2000, pet denied))); Perry, 16 S.W.3d at 187 (holding that the plaintiff's acceptance of the contract "by giving his own draft drawn on his own bank account" constituted contracting in his own name for purposes of the first Tinsley exception); Covington v. Sloan, 124 S.W. 690, 690 (Tex. Civ. App.—San Antonio 1910, no writ) (holding that a partner who contracted in his own name "as an agent for the partnership" could sue in his own name (citing Cleveland v. Heidenheimer, 46 S.W. 30 (Tex. 1898); Tinsley v. Dowell, 26 S.W. 946 (Tex. 1894))).

---

[37]Contract, Docket Entry No. 35.

Moreover, it is undisputed that Kakabadze paid for the armaments and munitions from his own funds.[38] Accordingly, even if Kakabadze was acting as an agent for the Ministry, he has standing to assert his claims because he has an interest in the subject matter of the contract.  See Perry, 16 S.W.3d at 187-88 ("[Plaintiff's] furnishing of the money to pay [Defendant] gave [Plaintiff] an interest in the subject matter of the contract.").

Defendants also allege that Kakabadze lacks standing because he has suffered no injury.[39]  Defendants argue that because Kakabadze was "fully reimbursed by the Ministry for the transactions,"[40] the Ministry is the party "with a personal stake"[41] in this litigation and "only the independent actions of the Ministry could hypothetically lead to injury to [Kakabadze]."[42] Defendants similarly argue that they are entitled to summary judgment on all of Kakabadze's claims because Kakabadze has not suffered any damages.[43]  Defendants point out that in order to recover on any of his alleged claims for relief Kakabadze must adequately allege that he suffered damages related to the

---

[38]Defendants' Motion for Summary Judgment, Docket Entry No. 30, p. 2; Kakabadze's Response, Docket Entry No. 31-1, p. 6.

[39]Defendants' Motion for Summary Judgment, Docket Entry No. 30, pp. 10-12.

[40]Id. at 10.

[41]Id. at 12.

[42]Id. at 10-11.

[43]Id. at 5-8.

complained-of conduct.[44] Defendants argue that Kakabadze has suffered no damages because he was reimbursed by the Ministry for all monies that he paid to Defendants.[45]

A Texas court of appeals addressed a similar argument in Texas Utilities Fuel Co. v. Marathon Oil Co., No. 11-98-00079-CV, 2000 WL 34234653 (Tex. App.—Eastland March 9, 2000, no pet.) (not designated for publication). In Marathon Texas Utilities Fuel Company ("TUFCO") entered into a take-or-pay contract to purchase natural gas from several sellers who were represented by Marathon. Id. at *1. TUFCO, identified as the "Buyer" in the contract, was a sister corporation of Texas Utilities Electric Company ("TU Electric"). Id. "TUFCO was formed for the purpose of acquiring and transporting natural gas, as well as other fuels, for use by TU Electric in its production of electricity." Id. TUFCO sued Marathon alleging that when natural gas prices declined it increased the sellers' delivery capacity in bad faith "in an attempt to 'exploit' the high prices under the contract." Id. at *1-2.

Marathon brought a motion for summary judgment alleging, inter alia, that "TUFCO suffered no damages in that TUFCO was reimbursed by TU Electric for all of its costs in supplying gas to TU Electric." Id. at *9. The court of appeals noted that "TUFCO, by

---

[44] Id. at 5-6.

[45] Id. at 6-8.

agreement, was reimbursed by TU Electric for all of its gas acquisition costs, including the purchase price" and that "although TUFCO acted in its own name, by agreement, it was acting on behalf of TU Electric." Id. The court held that there was "a fact issue as to whether TUFCO purchased gas under the contract as TU Electric's agent" but further held that "[i]f it did purchase the gas as an agent for TU Electric, TUFCO could still bring this lawsuit [because] '[a]n agent who is a party promisee on a contract made by him on behalf of his principal may bring suit on that contract in his own name.'" Id. (quoting Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc., 630 F.2d 250, 258 (5th Cir. 1980)).

The court finds the reasoning of the Texas court of appeals in Marathon persuasive. Defendants' arguments regarding Kakabadze's reimbursement from the Ministry are not materially distinguishable from the arguments advanced in Marathon. Accordingly, the court concludes that Defendants have failed to establish the absence of a genuine issue of material fact regarding their arguments that Kakabadze has not suffered any damages and does not otherwise have standing to assert his claims.

Defendants also argue that "[t]his case is not ripe for adjudication because it rests upon the contingent future event that the Ministry will agree that an overcharge has occurred and make a claim against Plaintiff."[46] The court finds Defendants' argument

---

[46] Id. at 8-9.

unpersuasive. The court has already concluded that Defendants have failed to establish the absence of a genuine issue of material fact as to whether Kakabadze suffered any damages. Furthermore, all of the conduct of which Kakabadze complains has already occurred. Accordingly, the court concludes that Defendants have failed to meet their initial burden to demonstrate the absence of a genuine issue of material fact with regard to any of Kakabadze's claims, and their motion for summary judgment will therefore be denied.

### IV. Kakabadze's Motion for Summary Judgment

Kakabadze has moved for summary judgment on his fraud claim.[47] To prevail on a fraud claim under Texas law a plaintiff must prove that (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; (4) the plaintiff actually and justifiably relied upon the representation; and (5) the plaintiff thereby suffered an injury. Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001).

Because Kakabadze would carry the burden of proof at trial, he must present evidence that would require "a directed verdict if the evidence went uncontroverted at trial." Int'l Shortstop, 939 F.2d

---

[47]Kakabadze's Motion for Summary Judgment, Docket Entry No. 29, pp. 11, 14.

at 1264-65. Kakabadze alleges that "Defendants agreed to act as [his] purchasing agent in the United States in exchange for a 10% commission of the purchase price on all goods purchased"[48] and that "Defendants agreed to bill Kakabadze at cost for freight and shipping of the goods and equipment purchased with no mark-up or commission on freight and shipping charges."[49] Kakabadze further alleges that "[i]n order to artificially increase the commissions paid to Defendants under the parties' agreements . . . Defendants manually and/or electronically manipulated original invoices and related documents by increasing the price for certain items above what Defendants were actually charged."[50]

Kakabadze has produced invoices that evidence the alterations made by Stoyanov.[51] Taken together, these invoices support an inference that the parties had agreed to a 10% commission

---

[48]Id. at 15.

[49]Id.

[50]Id. at 16.

[51]See Original Desert Tactical Arms Sales Order, Exhibit 4 to Kakabadze's Motion for Summary Judgment, Docket Entry No. 29-3, p. 2; Altered Desert Tactical Arms Sales Order, Exhibit 6 to Kakabadze's Motion for Summary Judgment, Docket Entry No. 29-3, p. 6; see also M5 International Company Inc Invoice Dated 12/11/09, Exhibit 5 to Kakabadze's Motion for Summary Judgment, Docket Entry No. 29-3, p. 4. Kakabadze has also produced invoices to demonstrate that Stoyanov billed him for shipping charges and export fees at prices higher than M5's cost. See Falcon Defense Group Export Service Invoice, Exhibit 9 to Kakabadze's Motion for Summary Judgment, Docket Entry No. 29-3, p. 12; M5 International Company Inc Invoice Dated 4/23/2009, Exhibit 10 to Kakabadze's Motion for Summary Judgment, Docket Entry No. 29-3, p. 14.

structure, as alleged by Kakabadze.[52] Kakabadze has also produced a contract dated May 16, 2008, wherein Stoyanov agrees to a 10% commission for the purchase of certain armaments and munitions,[53] and e-mails in which Stoyanov references a 10% commission for M5.[54] Kakabadze further alleges that Defendants' admission that Stoyanov altered supplier and manufacturer invoices is sufficient to meet his initial burden for summary judgment.[55]

Defendants contend that there are disputed issues of material fact for trial. Defendants allege that after the May 16, 2008, contract was completed, "Stoyanov indicated M5 would not work under the same terms as the prior contract as the commission rate of 10% was insufficient for the amount of work that was required."[56]

---

[52] The price charged by M5 to Kakabadze is approximately 10% higher than the price shown on the altered supplier invoice. Compare M5 International Company Inc Invoice Dated 12/11/09, Exhibit 5 to Kakabadze's Motion for Summary Judgment, Docket Entry No. 29-3, p. 4, with Altered Desert Tactical Arms Sales Order, Exhibit 6 to Kakabadze's Motion for Summary Judgment, Docket Entry No. 29-3, p. 6.

[53] Contract, Docket Entry No. 35.

[54] E-mail from Zlatan Stoyanov to Evgenii re: Prices 05/21/09 (May 22, 2009, 3:32 am), Exhibit 12 to Kakabadze's Motion for Summary Judgment, Docket Entry No. 29-3, p. 26; E-mail from Zlatan Stoyanov to Evgenii re: Prices for McMillan 25 x 50 and 10 x 338 06/28/2010 (June 28, 2010, 7:35 pm), Exhibit 13 to Kakabadze's Motion for Summary Judgment, Docket Entry No. 29-3, p. 28.

[55] Kakabadze's Motion for Summary Judgment, Docket Entry No. 29, pp. 14-15, 19; see, e.g., First Amended Answer, Docket Entry No. 19, pp. 3-4 ¶¶ 26-28.

[56] Defendants' Response, Docket Entry No. 32, p. 2; see also id. at 7-8; Stoyanov Deposition Transcript, Exhibit 1 to Defendants'
(continued...)

Defendants contend that Pugach acknowledged that Defendants were no longer bound by the 10% commission structure after the initial contract and instructed them to only provide M5's invoice in subsequent transactions.[57] Defendants allege that although they were permitted to bill at a higher rate, Pugach "indicated that any manufacturer's invoice that was forwarded to him would need to be altered to account for the agreed upon total price inclusive of M5 fees but appear that only a 10% commission was charged."[58]

---

[56](...continued)
Response, Docket Entry No. 32-1, pp. 7-10; First Amended Answer, Docket Entry No. 19, pp. 12-14 ¶¶ 167-71.

[57]First Amended Answer, Docket Entry No. 19, p. 14 ¶ 171; see also Defendants' Response, Docket Entry No. 32, p. 7; Stoyanov Deposition Transcript, Exhibit 1 to Defendants' Response, Docket Entry No. 32-1, p. 11; Stoyanov Deposition Transcript, Exhibit 3 to Kakabadze's Motion for Summary Judgment, Docket Entry No. 29-2, pp. 25-26.

[58]First Amended Answer, Docket Entry No. 19, p. 14 ¶ 171; see also Stoyanov Deposition Transcript, Exhibit 3 to Kakabadze's Motion for Summary Judgment, Docket Entry No. 29-2, pp. 5, 24-30. The following exchange took place at Stoyanov's deposition:

Q. [by Kakabadze's counsel] Why did you alter the invoice?

A. [by Stoyanov] Because this is the way Mr. Pugach wanted to do it.

Q. For what purpose?

A. So, the prices that indicate -- he said, "We can give you increase in prices of what you charge only if the prices from the manufacturer is higher." So, he said, "The way to do it, do it this way, please."

Q. He told you to alter an invoice of a supplier?
(continued...)

Defendants further allege that Pugach was Kakabadze's agent.[59] The summary judgment evidence supports an inference that Pugach was Kakabadze's agent with regard to the transactions at issue.[60] Under

---

[58](...continued)
A. Yes.

. . . .

Q. You are telling me that the blame came to you for falsifying those invoices and you have testified that you did so at the instruction of Mr. Pugach?

A. Agreement. Not Instruction.

Q. With the agreement of Mr. Pugach. Was it your idea?

A. No.

Q. Whose idea was it?

A. Mr. Pugach.

Q. Did he instruct you to do it?

A. He said that this is the form and shape [it] should be done.

. . . .

Q. And what was the reason for altering the invoices instead of simply increasing your percentage of commission?

A. Because this is basically Mr. Pugach wanted it to be done this way.

Stoyanov Deposition Transcript, Exhibit 3 to Kakabadze's Motion for Summary Judgment, Docket Entry No. 29-2, pp. 27-28, 29, 63-64.

[59]Defendants' Response, Docket Entry No. 32, pp. 2, 9.

[60]See Kakabadze Deposition Transcript, Exhibit 2 to Defendants' Response, Docket Entry No. 32-2, pp. 8-9, 18-19, 22-23; Pugach (continued...)

Texas law "an agent's knowledge is generally imputed to its principal." <u>Grant Thornton LLP v. Prospect High Income Fund</u>, 314 S.W.3d 913, 924 (Tex. 2010). A party with actual knowledge of the falsity of a representation cannot establish the reliance element of a fraud claim. See <u>Koral Indus., Inc. v. Security-Connecticut Life Ins. Co.</u>, 788 S.W.2d 136, 146 (Tex. App.—Dallas) ("[A]ctual knowledge is inconsistent with the claim that the allegedly defrauded party has been deceived, and it negatives the essential element of reliance upon the truth of the representations." (citing <u>John Hancock Mut. Life Ins. Co. v. Brennan</u>, 324 S.W.2d 610, 614 (Tex. Civ. App.—San Antonio 1959, writ ref'd n.r.e.); <u>Allen v. Lasseter</u>, 35 S.W.2d 753, 757 (Tex. Civ. App.—Waco 1931, writ ref'd))), <u>writ denied</u>, 802 S.W.2d 650 (Tex. 1990) (per curiam); <u>Thrower v. Brownlee</u>, 12 S.W.2d 184, 186-87 (Tex. Comm'n App. 1929, judgm't adopted) ("Where false representations or promises are made to induce another to act, and, before such other does act, he learns of the falsity of such representations or promises, it cannot of course be said that he relied upon them believing them to be true, for, knowing their falsity, he has not been deceived."). However, "when the agent is acting fraudulently toward his principal . . . the agent's knowledge is not binding on the

---

[60](...continued)
Deposition Transcript, Exhibit 4 to Defendants' Response, Docket Entry No. 32-4, pp. 10-11, 19-20; Stoyanov Deposition Transcript, Exhibit 3 to Kakabadze's Motion for Summary Judgment, Docket Entry No. 29-2, pp. 17, 39.

principal and one who avails himself of the fraudulent services of the agent cannot claim that the agent's acts or knowledge bind the defrauded principal." Crisp v. Southwest Bancshares Leasing Co., 586 S.W.2d 610, 615 (Tex. Civ. App.—Amarillo 1979, writ ref'd n.r.e.); see also United States v. Aubin, 87 F.3d 141, 147 (5th Cir. 1996) ("[T]he rule of Texas law . . . that an agent's knowledge is imputed to his principal[] does not protect those who collude with an agent to defraud the principal.").

In reviewing the summary judgment evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves, 120 S. Ct. at 2110. Drawing all reasonable inferences in favor of Defendants, the court concludes that a genuine issue of material fact exists as to whether Pugach was Kakabadze's agent with regard to the transactions at issue. Furthermore, if Pugach was Kakabadze's agent, a fact issue exists regarding whether Pugach knew of the complained-of conduct and acted fraudulently toward Kakabadze. Kakabadze's Motion for Summary Judgment will therefore be denied.

## Conclusions and Order

For the reasons explained above, the court concludes that neither party has established the absence of a genuine issue of material fact for trial on any of Kakabadze's alleged claims for relief. Accordingly, Plaintiff, Mamuka Kakabadze's Motion for

Summary Judgment Against Defendants M5 International Company, Inc. and Zlatan Stoyanov (Docket Entry No. 29) and Defendants M5 International Company, Inc. and Zlatan Stoyanov's Motion for Summary Judgment and/or Motion to Dismiss (Docket Entry No. 30) are **DENIED**.

Defendants have moved to dismiss their counterclaim for fraud.[61] Accordingly, Defendants' fraud counterclaim (Docket Entry No. 19, pp. 16-17) is **DISMISSED with prejudice**.

**SIGNED** at Houston, Texas, on this the 5th day of June, 2014.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[61] See Defendants' Response, Docket Entry No. 32, p. 11 ("Defendants filed a Counterclaim against Plaintiff alleging fraud. Defendant will voluntarily dismiss that claim. As such, there is no need to address the summary judgment argument related thereto.").